**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ADAR BAYS, LLC<br><br>                              Plaintiff,<br><br>           v.<br><br>5BARZ INTERNATIONAL, INC.<br><br>                              Defendant. | **Civil Action No.: 16-CV-6231 (NRB)**<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff, Adar Bays, LLC ("Plaintiff" or "Adar Bays"), by and through its undersigned attorneys, Garson, Ségal, Steinmetz, Fladgate LLP, brings its Verified Complaint against Defendant, 5BARZ International, Inc. ("Defendant" or "BARZ") and respectfully alleges as follows:

## THE PARTIES

1.      Plaintiff Adar Bays, LLC is a limited liability company duly organized under the laws of the state of Florida, having a principal place of business located at 3411 Indian Creek Drive, Suite 403, Miami Beach, Florida, 33140.

2.      Upon information and belief, Defendant, BARZ is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business located at 9670 Gateway Drive, Second Floor, Reno Nevada 89521. BARZ is traded publicly over the counter, on the "Pink Sheets", under the symbol "BARZ."

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this judicial district pursuant to 27 U.S.C. §1391(a), in that the agreement from which this dispute arises designates that it is governed

and construed in accordance with the laws of the State of New York and that any action brought by either party against the other must be brought in New York.

FACTS COMMON TO ALL CLAIMS

**The Note and Adar Bays' First Notice of Conversion**

5.        On or about June 15, 2015, BARZ issued a $52,500.00 8% Convertible Redeemable Note to Adar Bays (the "Note"). (A true and correct copy of the Note is attached hereto as **Exhibit A**.)

6.        The Note provides that Adar Bays is entitled to convert all or any amount of the outstanding balance of the Note into shares of BARZ Common Stock (the "Common Stock"). Specifically, Section 4(a) of the Note provides, in pertinent part:

> The Holder of this Note is entitled, at any time, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the Common Stock") at a price ("Conversion Price") . . . (Ex. A, § 4(a)).

7.        The Conversion Price was to be determined for each share to be equal to:

> 60% of the **lowest trading price** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded or any exchange upon which the Common Stock may be traded in the future ("Exchange"), for the ***fifteen*** prior trading days including the day upon which a Notice of Conversion is received by the Company or its transfer agent . . . (Ex. A, § 4(a)).

8.        The mechanics of converting the Note required Adar Bays to submit a Notice of Conversion.  Section 4(a) of the Note provides, in pertinent part:

> …provided such Notice of Conversion is delivered by fax or other electronic method of communication to the Company or its transfer agent after 4 P.M. Eastern

2

Standard or Daylight Savings Time if the Holder wishes
to include the same day closing price. (Ex. A, § 4(a)).

9.      The conversion feature was essential in inducing Adar Bays to enter
into the Note.  Investment in BARZ came with significant risk due to its unstable
financial condition, specifically, its high net loss and limited revenue, as well as the
company's own substantial doubts about the ability of BARZ to continue as a going
concern without further investment. Adar Bays was only willing to purchase the
Note if it could earn a return commensurate with the risk.  The conversion feature
of the Note allowed for such a return. Adar Bays' ability to obtain stock at a
discount to the market price then resell it on the open market afforded it the
opportunity to obtain a return on its investment from third parties and at a
significantly higher rate of return. Any failure by BARZ to honor Notices of
Conversion, therefore, would deprive Adar Bays of the essential benefit for which it
negotiated, and for which it purchased, the Note.

10.     To ensure the availability of shares for the purposes of conversion
under the Note, Section 12 thereunder provides that BARZ would initially "issue
irrevocable transfer agent instructions reserving 3,684,000 shares of its Common
Stock for conversions under this Note (the "Share Reserve")." (Ex. A, § 12). It also
provides that "The company should at all times reserve a minimum of four times
the amount of shares required if the note would be fully converted. The reserve
shall be replenished as needed to allow for conversions of this Note using said 4x
reserve." (*Id.*)

## BARZ's Willful Refusal to Honor the Adar Bays' Notice of Conversion and Share Reserve

11.     On or about March 30, 2016, Adar Bays duly submitted a Notice of
Conversion to BARZ for a portion of the Note (the "First Notice of Conversion").
Specifically, five thousand dollars ($5,000.00) of the principal amount of the Note
was to be converted into 184,775 shares of BARZ Common Stock, representing a

conversion price of $.02706 per share. (A true and correct copy of the First Notice of Conversion is attached hereto as **Exhibit B**.)

12.      Without excuse or justification, BARZ willfully refused to honor the First Notice of Conversion, and failed to deliver to Adar Bays the shares that it was contractually obligated to deliver.

13.      On or about May 10, 2016, Adar Bays, through counsel, sent a Default Notice Letter to BARZ's CEO, Daniel Bland, and Director of Finance, Mark Geohegan stating, *inter alia,* that BARZ's failure to deliver the shares pursuant to the Notice of Conversion by April 4, 2016, BARZ breached Section 4(a) of the Note and caused the Event of Default outlined in Section 8(k) thereof. (A true and correct copy of the Default Notice is annexed hereto as **Exhibit C**.)

14.      Despite this notice, BARZ has neither delivered the shares of Common Stock, nor delivered the monies owed to Adar Bays pursuant to the default provisions in Section 8, and from these actions, it is clear that BARZ does not intend to honor future Notices of Conversion.

### BARZ's Defaults

15.      BARZ has previously conceded that it had already caused an Event of Default. Section 8(m) of the Note states that an Event of Default shall occur if the "Company shall not be 'current' in its filings with the Securities and Exchange Commission ("SEC")." In discussing the Note in its Form 10-K filed with the SEC for the year ended December 31, 2015, BARZ states: "[o]n November 22, 2015, the Company became delinquent in its filing requirements with the Securities and Exchange Commission, triggering an event of default of the note. Upon the Event of Default, the interest rate was increased to 24% per annum. The Note is payable upon demand." (A true and correct copy of the Annual Report for 2015 is attached hereto as **Exhibit D**.) While BARZ is presently "current" in its filings with the SEC, on numerous occasions since entering into the Note, the company has been delinquent, triggering the 24% default interest on several occasions.

16.      Further, BARZ's deliberate refusal to honor the terms of the Note has led to no less than **four** (4) additional Events of Default outlined in Section 8 of the Note.

17.     First, and most importantly, BARZ's failure to initially deliver 184,775 shares of its Common Stock to Adar Bays constituted an Event of Default. Section 8(k) states that an Event of Default shall occur if:

> The Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion. (Ex. A, § 8(k)).

The right of conversion is unequivocal, and central to the entire agreement. By not delivering the shares, or hindering delivery of such in any way, BARZ is in breach of the Note.

18.     Second, Section 8(l) of the Note states that an Event of Default shall occur if:

> The company shall not replenish the reserve set forth in Section 12, within 3 business days of the request of the Holder. (Ex. A, § 8(l)).

19.     By replacing its transfer agent without providing such instruction to the new transfer agent within 3 business days of Adar Bays' May 10, 2016 Letter, BARZ is in breach of the Section 8(l) of the Note.

20.     Third, Section 8(b) states that an Event of Default shall occur if:

> Any of the representations or warranties made by the Company herein or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Company in connection with the execution and delivery of this Note, or the Securities Purchase Agreement under which this note was issued shall be false or misleading in any respect. (Ex. A, § 8(b)).

21.     In conducting itself in this manner, BARZ has breached numerous representations and warranties under the Note.  For example:

> i.   in Section 4(a) of the Note, BARZ represented that "The Holder of this Note is entitled, at any time, to convert all or any amount of the

principal face amount of this Note then outstanding into shares of the Company's common stock." (Ex. A, § 4(a)); and,

    ii. in Section 12 of the Note, BARZ agreed that the Company would "at all times reserve a minimum of four times the amount of shares required if the note would be fully converted." (Ex. A, §12).

22.    BARZ has breached each representation relating to delivery of shares upon conversion, as well as those requiring BARZ to maintain an adequate Share Reserve for such conversion. By doing so, BARZ's actions have caused the Event of Default under Section 8(b) of the Note.

23.    Finally, Section 8(c) states that an Event of Default shall occur if "The Company shall fail to perform or observe, in any respect, any covenant, term, provision, condition, agreement or obligation of the Company under this Note or any other note issued to the Holder." (Ex. A, §8(c)).

24.    On May 10, 2016, Adar Bays sent CEO Bland and Director of Finance Geohegan a letter informing them that BARZ' failure to deliver shares and its failure to maintain the Share Reserve were breaches of the Note.

25.    From March 30, 2016 to November 9, 2016, BARZ withheld the shares from Adar Bays without justification, placing BARZ in clear breach of Section 8(c) of the Note.

26.    At no point has Adar Bays ever, whether formally or informally, in writing or orally, waived BARZ's defaults.

### BARZ's Willful Breach of the Settlement Agreement

27.    Following the commencement of this action, Adar Bays and BARZ negotiated for a Settlement Agreement (the "Agreement"), which was fully executed on November 1, 2016.  A true and accurate copy of the Settlement Agreement is annexed hereto as **Exhibit E.**

28.    The Agreement provided that BARZ would:

    i. deliver 184,775 shares of its Common Stock to Adar Bays "immediately upon signing;"

    ii. file any and all documents required to become current with the

Securities and Exchange Commission within five (5) days of signing;

iii. issue irrevocable transfer agent instructions reserving 4,588,128 shares of common stock upon signing;

iv. pay Adar Bays $27,911.11, or deliver common stock based on the market value on November 15, 2016, December 15, 2016, and January 15, 2016; and,

v. pay Adar Bays any shortfalls in its net proceeds from the sale of delivered stock such that Plaintiff would recover at least $83,733.33.

29.     Defendant breached this Agreement at the outset, and breached each and every obligation contained therein.

30.     First, Defendant failed to deliver 184,775 shares upon signing, and instead, fabricated numerous excuses as to why it could not deliver the shares. Indeed, Defendant admits it failed to deliver the shares upon signing in its most recent submission to the Court, Dkt. 22, stating that the shares were transferred on November 3, 2016.  In fact, the shares were not delivered until November 9, 2016, despite an obligation to deliver the shares on November 1, 2016, upon signing.

31.     Next, Defendant failed to come current with the SEC by November 6, 2016, as it was obligated to do under the Settlement Agreement.   Instead, Defendant waited until December 2, 2016 to file the necessary Quarterly Report. Because Defendant was not current until this date, Plaintiff was unable to sell the shares (which were delivered late to begin with) until then.  From November 1, 2016, when the shares should have been delivered pursuant to the Agreement, to December 5, 2016, when Defendant finally became current, the value of the 184,775 shares of stock decreased by over $4,000.00. (A true and correct copy of a chart representing BARZ' stock price and volume from March 30, 2016 to February 3, 2017 is annexed hereto as **Exhibit G**).[1]

32.     Defendant's third breach of the Agreement involved the transfer agent

---

[1] On November 1, 2016, the high trading price of BARZ stock was $.08 per share, giving the 184,775 shares of stock an implied value of $14,782.00.   On December 5, 2016, the business day following Defendant's filing of the Quarterly Report, the high trade price was $.0575, giving the shares an implied value of $10,613.06.

instructions.  On November 8, 2016, a week after Defendant was obligated to issue **irrevocable** transfer agent instructions reserving 4,588,128 shares of common stock, BARZ's transfer agent informed Adar Bays that Defendant "established a reserve of 4,588,128 shares *to be amended or released from time to time by the Board of Directors of* [BARZ]."  Despite the clear language of the Agreement requiring the transfer agent instructions to be irrevocable, BARZ established a reserve such that it could unilaterally withdraw it at any time, again placing it in breach of the Agreement.

33.     On November 15, 2016, Defendant was obligated to pay Adar Bays $27,911.11 or deliver shares of equal value.  Defendant failed to make any payment on November 15, 2016.

34.     Again, on December 15, 2016, Defendant was obligated to pay Adar Bays $27,911.11 or deliver shares of equal value.  Defendant failed to make any payment on December 15, 2016.

35.     Finally, on January 15, 2016, Defendant was obligated to pay $27,911.11 or deliver shares of equal value.  Defendant failed to make any payment on January 15, 2016.

36.     Accordingly, it is clear that Defendant breached each and every obligation under the Settlement Agreement.

### Adar Bays' December 29, 2016 Notice of Conversion

37.     Given Defendant's breach of the Agreement, Adar submitted a new Notice of Conversion on December 29, 2016 seeking to convert $7,000.00 of the Note into 257,542 shares of BARZ common stock (the "Second Notice of Conversion"). A true and accurate copy of the Second Notice of Conversion is annexed hereto as **Exhibit G**.

38.     The transfer agent responded to both Adar Bays and BARZ that it would need a corporate resolution from BARZ in order to process the conversion.

39.     BARZ wilfully refused to issue the corporate resolution in a deliberate

14

effort to thwart Adar Bays' conversion, representing yet another breach of its obligations under Note.

**Remedies Under the Note**

40.     Due to BARZ's persistent and willful failure to remedy its breaches, Adar Bays has incurred significant damage. Since the First Notice of Conversion was delivered on March 30, 2016, the trading price of BARZ stock has varied significantly, fluctuating from $0.0446 per share on December 22, 2016 to $0.12 per share on July 14, 2016.  (Ex. F).

41.     Section 8(n) of the Note provides for separate default damage calculations, depending on the Event of Default. With regard to an Event of Default for failure to deliver shares under Section 8(k), the Note articulates that BARZ is to pay Adar Bays liquidated damages in the amount of $250.00 per day beginning on the fourth day after the Notice of Conversion was delivered, escalating to $500.00 per day beginning on the tenth day after the Notice of Conversion was delivered until the shares are duly delivered.

42.     BARZ received the First Notice of Conversion on March 30, 2016, making the deadline to deliver April 4, 2016. Accordingly, pursuant to the agreed-upon terms of the Note, default payments between April 4, 2016 and the delivery of shares on November 9, 2016, which are due and owing to Adar Bays, accrued to the amount of $108,000.00.

43.     Additionally, BARZ received the Second Notice of Conversion on December 29, 2016, making its deadline to deliver the shares January 4, 2016. Accordingly, pursuant to the agreed-upon terms of the Note, default payments related to the Second Notice of Conversion, have accrued, to date of filing this First Amended Complaint, to the amount of $16,000.00, and continue to accrue daily.

44.     Alternatively, Section 8 of the Note provides that "[i]f the Company fails for any reason to deliver to the Holder the conversion shares by the 3rd business day following the delivery of a Notice of Conversion to the Company and if the Holder incurs a Failure to Deliver Loss, then at any time the Holder may provide the Company written notice indicating the amounts payable to the Holder

14

in respect of the Failure to Deliver Loss and the Company must make the Holder whole as follows: Failure to Deliver Loss = [(High trade price at any time on or after the day of exercise) x (Number of conversion shares)]." (Ex. A, §8).

45.     With regard to the First Notice of Conversion, the highest trade price was $0.12 per share and Adar Bays was entitled to 184,775 shares. Therefore, the Failure to Deliver Loss as it relates to the First Notice of Conversion was $22,173.00.  With Regard to the Second Notice of Conversion, the highest trade price was $.0675 and Adar Bays is entitled to 257,542 shares.   Therefore, the Failure to Deliver Loss as it relates to the Second Notice of Conversion is $17,384.08.

46.     Furthermore, upon any Event of Default under the Note, interest is to accrue at a default rate of twenty-four (24%) percent per annum.  Consequently, in addition to the default payments, interest on the Note is accruing at a rate of twenty-four percent (24%), and has been since as early November 22, 2015, the date on which even BARZ admits that an Event of Default occurred.  BARZ concedes on page 32 of its Form 10-Q Quarterly Report for the period ended September 30, 2016, that it owes principal and interest on the Note, payable upon demand.  (A true and accurate copy of the Quarterly Report is annexed hereto as **Exhibit H**).  It is worth noting that this report, on the same page, also acknowledges the Settlement Agreement and the company's obligations thereunder.  Interestingly, in the 10-Q, BARZ claims that it owes only $63,162.00 in principal and interest on the Note, whereas on page 65 in its Annual Report for the year 2015, it admitted that as of December 31, 2015, it owed $82,193.00. (Ex. D, p. 65).  Apparently, without making any payments or delivering any shares to Adar, it would seem that BARZ's board deemed it appropriate to inform its shareholders that this debt has decreased.

47.     Section 7 of the Note states that "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note." (Ex. A, § 7). Therefore, Adar Bays is entitled to all costs and attorneys' fees associated with enforcement and collection under the Note.

48.     This provision is reinforced by Section 8 of the Note, which states that:

> If the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging an attorney, the if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding. (Ex. A, §8).

49.     Finally, the parties agreed in Section 9 of the Note that:

> In case any provision of this Note is held by a court of competent jurisdiction to be excessive in scope or otherwise invalid or unenforceable, such provision shall be adjusted rather than voided, if possible, so that it is enforceable to the maximum extent possible, and the validity and enforceability of the remaining provisions of this Note will not in any way be affected or impaired thereby." (Ex. A, § 9).

### Alternative Remedies Under the Settlement Agreement

50.     In the alternative, the Court may grant injunctive relief as it relates to Defendant's breach of the Settlement Agreement.

51.     Section 5 of the Settlement Agreement states, *inter alia*, that the Court shall retain jurisdiction to enforce the Settlement Agreement, the Purchase Agreement, and the Note.  The parties also agreed in that Section that the Court could immediately order injunctive relief requiring Defendant "to become current in its SEC filings, replenish or reissue the share reserve . . . or to deliver any settlement payment in cash or stock."  (Ex. E, §5).

### FIRST CLAIM FOR RELIEF
### (FAILURE TO DELIVER SHARES: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

52.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53.     Pursuant to the agreement between the parties, BARZ is obligated to deliver to Adar Bays 257,542 shares of its Common Stock, along with any resolutions necessary for Adar Bays to sell the shares publicly without restriction.

54.     Despite its obligation to do so, BARZ has failed and refused to deliver

14

said shares of stock or accompanying resolutions to Adar Bays.

55.     As result of such refusal by BARZ, Adar Bays has suffered damages.

56.     Adar Bays has no adequate remedy at law.

57.     In the absence of injunctive relief, Adar Bays will suffer irreparable harm.

58.     Adar Bays requests, therefore, that the Court enter an Order, preliminarily and permanently, requiring BARZ to deliver immediately to Adar Bays 257,542 shares of its Common Stock, along with the necessary corporate resolutions to enable Adar Bays to sell such Common Stock publicly without restriction.

## SECOND CLAIM FOR RELIEF
### (FAILURE TO DELIVER SHARES:  DAMAGES)

59.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60.     Adar Bays, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than one-hundred thousand dollars ($100,000.00).

## THIRD CLAIM FOR RELIEF
### (FAILURE TO RESERVE SHARES: PRELIMINARY & PERMANENT INJUNCTION)

61.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     Pursuant to the agreement between the parties, BARZ is required at all times to have authorized and reserved four (4) times the number of shares that is actually issuable upon full conversion of the Note.

63.     Despite its obligation to do so, BARZ has failed to instruct its transfer agent regarding Adar Bays' share reserve, effectively impeding Adar Bays from effectuating its conversion right under the Note.

64.     As a result of such failure by BARZ, Adar Bays has suffered damages.

65.     Adar Bays has no adequate remedy at law.

66.    In the absence of injunctive relief, Adar Bays will suffer irreparable harm.

67.    Consequently, Adar Bays requests, that this Court enter an Order, preliminarily and permanently, requiring BARZ to provide fully executed Irrevocable Transfer Agent Instructions to its designated transfer agent in the form initially delivered pursuant to the Purchase Agreement, instructing it to reserve four times the amount of shares of BARZ common stock for the purposes of effectuating conversions under the BARZ 8% Convertible Redeemable Note held by Adar Bays.

### FOURTH CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: PRELIMINARY & PERMANENT INJUNCTION)

68.    Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.    Adar Bays desires to execute future conversions.

70.    BARZ's failure to deliver shares of stock and otherwise comply with its obligations upon Adar Bays' partial conversion of the Note constitutes an anticipatory breach by BARZ of its obligation to convert portions of the Note into shares of Common Stock in the future.

71.    As a result of such anticipatory breach by BARZ, Adar Bays has been damaged.

72.    Adar Bays has no adequate remedy at law.

73.    Adar Bays therefore requests that the Court enter an Order, preliminarily and permanently, directing BARZ to honor, in accordance with the agreement between the parties, all conversion requests hereafter duly submitted by Adar Bays to convert all or any portion of the Note into shares of BARZ Common Stock, and directing BARZ to deliver all corporate resolutions necessary to enable Adar Bays to sell such shares publicly without restriction.

### FIFTH CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: DAMAGES)

74.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Adar Bays is therefore entitled to an award of damages in an amount to be determined at trial, but not less than one-hundred thousand dollars ($100,000.00).

### Sixth CLAIM FOR RELIEF

#### (BREACH OF SETTLEMENT AGREEMENT: DAMAGES)

76.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 83 of this Complaint as if fully set forth herein.

77.     A valid contract exists between Adar and BARZ.

78.     BARZ failed to perform its obligations under the contract.

79.     Adar has been damages by BARZ's failure to perform.

80.     Adar, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less that one hundred thousand dollars ($100,000.00).

### Seventh CLAIM FOR RELIEF

#### (COSTS, EXPENSES & ATTORNEYS' FEES)

81.     Adar Bays re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 89 of this Complaint as if fully set forth herein.

82.     In accordance with Sections 7 and 8 of the agreement between the parties, BARZ agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by Adar Bays in collecting any amount under the Note.

83.     Therefore, Adar Bays is entitled to an award against BARZ for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Adar Bays, LLC seeks judgment against Defendant

5BARz International, Inc. as follows:

i.     On the First Claim for Relief, Adar Bays requests an Order, preliminarily and permanently, requiring BARZ to deliver 257,542 shares of its Common Stock, along with the necessary corporate resolutions to enable Adar Bays to sell such Common Stock publicly without restriction; and

ii.     On the Second and Fifth Claims for Relief, for damages relating to Defendant's breach of the Note in an amount to be determined at trial, but not less than one-hundred thousand dollars ($100,000);

iii.     On the Third Claim for Relief, Adar Bays requests an Order, preliminarily and permanently, requiring BARZ to provide fully executed Irrevocable Transfer Agent Instructions to its designated transfer agent in the form initially delivered pursuant to the Purchase Agreement, instructing it to reserve four times the amount of shares of BARZ common stock for the purposes of effectuating conversions under the BARZ 8% Convertible Redeemable Note held by Adar Bays.

iv.     On the Fourth Claim for Relief, Adar Bays requests an Order, preliminarily and permanently, directing BARZ to honor, in accordance with the agreement between the parties, all conversion requests hereafter duly submitted by Adar Bays to convert all or any portion of the Note into shares of BARZ Common Stock, and directing BARZ to deliver all corporate resolutions necessary to enable Adar Bays to sell such shares publicly without restriction.

v.     On the Sixth Claim for Relief, and in the alternative, for damages relating to Defendant's breach of the Settlement Agreement in an amount to be determined at trial, but not less than one-hundred thousand dollars ($100,000);

vi.     On the Seventh Claim for Relief for an award of Adar Bays' costs and expenses in prosecuting this action, including reasonable legal fees; and

vii.     On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and,

viii.     For such other further relief as the Court may deem just, proper, and in the interest of justice.

DATED:      NEW YORK, NEW YORK
            FEBRUARY 6, 2017

                                    RESPECTFULLY SUBMITTED,
                                    **GARSON, SEGAL,**
                                    **STEINMETZ,  FLADGATE LLP**
                                    *ATTORNEYS FOR PLAINTIFF*


                        BY:        _____/s/_____
                                    MICHAEL STEINMETZ (MS3164)
                                    KEVIN KEHRLI (KK1536)
                                    164 WEST 25TH STREET
                                    SUITE 11R
                                    NEW YORK, NY 10001
                                    **TELEPHONE:** (212) 380-3623
                                    **FACSIMILE:** (347) 537-4540
                                    **EMAIL:** KK@GS2LAW.COM

14