UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ADAR BAYS, LLC,

        Plaintiff,

      - against -

5BARZ INTERNATIONAL, INC.,

        Defendant.
----------------------------------X

**MEMORANDUM AND ORDER**

**16 Civ. 6231 (NRB)**

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    This litigation, between the lender-plaintiff, Adar Bays, LLC ("Adar Bays" or "plaintiff") and borrower-defendant 5Barz International, Inc. ("5Barz" or "defendant"), is the latest in a barrage of cases brought in this District and in the Eastern District of New York involving alleged breaches of nearly identical, convertible promissory notes of modest principal amounts.  Adar Bays has brought this action against 5Barz for having repeatedly breached the provisions of a $52,500 note and subsequent settlement agreement by failing to honor conversion requests, pay outstanding interest and principal, and remain current with the SEC.  Adar Bays now moves for summary judgment, seeking entry of judgment, along with $342,123.69 in damages, plus attorneys' fees and costs.  5Barz cross moves for judgment on the pleadings, contending that the note and the settlement agreement are void *ab initio* as imposing criminally usurious interest rates.

1

For the reasons we discuss *infra*, plaintiff's motion is granted and defendant's motion is denied. However, we decline to award much of the exorbitant and unwarranted damages that Adar Bays seeks, and reserve decision on the amount of attorneys' fees and costs to which Adar Bays is entitled.

## I.   BACKGROUND

5Barz "is in the business of designing, manufacturing and selling a line of cellular network infrastructure devices for use in the office, home and mobile marketplaces." Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1") ¶ 4, Nov. 13, 2017, Dkt. No. 53. Its shares are traded over-the-counter on the "Pink Sheets" under the symbol "BARZ."[1] Id. ¶ 3.

On June 16, 2015, 5Barz issued to Adar Bays a Convertible Redeemable Note (the "Note") in the principal amount of $52,500, with interest accruing at 8% per annum, and a June 16, 2016 maturity date. Id. ¶¶ 5, 72; see Declaration of Aryeh Goldstein ("Goldstein Decl.") Ex. A, Nov. 9, 2017, Dkt. No. 52. Adar Bays funded the Note in the amount of $50,000, representing the Note's face value less $2,500 for attorneys' fees. Pl.'s 56.1 ¶ 6.

---

[1] The Pink Sheets, historically printed on pink paper, "is a quotation service that certain broker-dealers use to post offers to sell and to buy securities not listed on a national exchange, and is not itself an exchange." SEC v. Boock, No. 09 Civ. 8261(DLC), 2011 WL 3792819, at *18 (S.D.N.Y. Aug. 25, 2011) (citing Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 568 F.3d 374, 377 (2d Cir. 2009)), reconsideration denied, 2011 WL 5417106 (S.D.N.Y. Nov. 9, 2011).

The terms of the Note give Adar Bays the right to convert portions of the unpaid principal balance and accrued interest into shares of 5Barz common stock at a discount relative to the market price. See id. ¶¶ 8-10; Note § 4(a)-(b). To ensure the availability of shares for such conversions, the Note requires 5Barz to issue irrevocable transfer agent instructions reserving 3,684,000 shares of 5Barz common stock. Pl.'s 56.1 ¶ 16; Note § 12. The Note also requires 5Barz to, at all times, "reserve a minimum of four times the amount of shares required if the [N]ote would be fully converted." Pl.'s 56.1 ¶ 17, Note § 12. Further, to preserve Adar Bays' ability to sell the converted shares, the Note requires 5Barz to remain "current" in its filings with the Securities and Exchange Commission (the "SEC"). See Pl.'s 56.1 ¶ 50; Note § 8(m).

To exercise its conversion rights under the Note, Adar Bays is to provide "the Company," i.e., 5Barz, with "written confirmation that th[e] Note is being converted," i.e., a "Notice of Conversion," "[t]he date of receipt (including receipt by telecopy) of such Notice of Conversion shall be the Conversion Date." Pl.'s 56.1 ¶ 11; Note § 3. The conversion price is "equal to 60% of the lowest trading price of the Common Stock as reported on the National Quotations Bureau OTCQB exchange [on] which [5Barz's] shares are traded . . . for the fifteen prior trading days including" the Conversion Date. Pl.'s 56.1 ¶ 10 (emphasis

omitted); Note § 4(a) (same).

The Note also enumerates several "Events of Default" and the resulting consequences for 5Barz.  Pl.'s 56.1 ¶ 49; Note § 8. Among other things, should 5Barz default in the payment of interest or principal on the Note, fail to deliver converted common stock to Adar Bays within three business days of the Conversion Date, not replenish the share reserve within three business days of Adar Bays' request, or "not be 'current' in its filings" with the SEC, then interest will begin to accrue "at a default interest rate of 24% per annum."  Pl.'s 56.1 ¶¶ 50, 52, 56; Note § 8.

Certain of these "Events of Default" trigger additional consequences.  Pl.'s 56.1 ¶ 61.  "If th[e] Note is not paid at maturity, the outstanding principal due under th[e] Note shall increase by 10%."  Id. ¶ 60; Note § 8.  In the event 5Barz fails to honor a Notice of Conversion, a "penalty" of $250 per day the shares are not delivered to Adar Bays is imposed, beginning the fourth day after the Conversion Date, and increasing to $500 per day beginning on the tenth day.  Pl.'s 56.1 ¶ 62; Note § 8. Alternatively, at Adar Bays' "election," it may invoke a "Make Whole" provision, where, upon providing 5Barz written notice, Adar Bays is entitled to an amount calculated as follows: "High trade price at any time on or after the day of exercise x Number of conversion shares."  Pl.'s 56.1 ¶ 68; Note § 8.

With the exception of satisfying its obligation, on June 16,

2015, the date the Note was issued, to issue instructions to its transfer agent to irrevocably reserve 3,684,000 shares of common stock, see Declaration of Mark Geoghegan ("Geoghegan Decl.") ¶¶ 7-8 & Ex. A, Jan. 5, 2017, Dkt. No. 59, 5Barz completely failed to comply with the requirements set forth in the Note.

First, on November 22, 2015, 5Barz "became delinquent in its filing requirements" with the SEC by failing to timely file its Form 10-Q. Pl.'s 56.1 ¶ 18; Goldstein Decl. ¶ 13 & Ex. B., at 63.

Second, on March 30, 2016, Adar Bays submitted a Notice of Conversion (the "First Notice of Conversion") to 5Barz to convert $5,000 of principal and accrued interest into 184,775 shares of common stock, representing a conversion price of $0.027 per share. See Pl.'s 56.1 ¶¶ 19, 21. After 5Barz failed to deliver the requested shares, Adar Bays, through counsel, "tendered a default notice . . . to [5Barz's] CEO, Daniel Bland, and its Director of Finance, Mark Geoghegan, stating, *inter alia*, that [5Barz's] failure to tender the shares pursuant to the First [Notice of] Conversion on or before April 4, 2016 had resulted in Defendant's breach . . . of the Note and had caused [a] corresponding Event of Default." Id. ¶ 23.

Finally, defendant failed to pay any principal or accrued interest when the Note matured on June 16, 2016. Id. ¶ 55. Plaintiff commenced this litigation soon afterwards. See Compl., Aug. 5, 2016, Dkt. No. 1.

While this litigation was pending, the parties temporarily resolved their differences, entering into a settlement agreement (the "Settlement Agreement") on November 1, 2016. Pl.'s 56.1 ¶ 28; Goldstein Decl. Ex. E. The Settlement Agreement required 5Barz to, *inter alia*: (1) "immediately upon signing," deliver 184,775 shares of common stock—the number of shares Adar Bays sought in its First Notice of Conversion—to Adar Bays; (2) "[u]pon signing," issue irrevocable transfer instructions to its transfer agent reserving at least 4,588,128 shares of common stock; (3) "within five days of signing," file any and all documentation to become current with the SEC; (4) on November 15, 2016, December 15, 2016, and January 15, 2017, tender to Adar Bays either (a) the sum of $27,911.11, or (b) the equivalent in common stock based on market value; and (5) remunerate any shortfalls actualized in Adar Bays' net proceeds from the sale of any common stock delivered under the Settlement Agreement, such that Adar Bays would recover at least a total value of $83,733.33 and 184,775 shares of common stock. Pl.'s 56.1 ¶ 29;[2] Settlement Agreement at 1-3. In return, Adar Bays "agreed to [release] any and all claims against" 5Barz "under the Note." Settlement Agreement at 1; see id. § 3. However,

---

[2] Defendant disputes plaintiff's summary of the Settlement Agreement as "contain[ing] material omissions" and "mischaracteriz[ing] [its] terms," Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") ¶ 29, Jan. 5, 2018, Dkt. No. 61, yet amazingly uses the exact same summary in its own declaration, see Geoghegan Decl. ¶ 13.

"[i]n the event of any breach or default by [5Barz] of the terms of th[e Settlement] Agreement . . . , [such] release . . . shall automatically be deemed ineffective and [Adar Bays] shall automatically and without further action be entitled to all its rights and preferences under th[e Settlement] Agreement, . . . and the Note."  Pl.'s 56.1 ¶ 30; Settlement Agreement § 1(g).

After signing the Settlement Agreement on November 1, 2016, 5Barz did not (1) deliver the 184,775 shares until November 9, 2016; (2) issue irrevocable share reserve instructions to the transfer agent; (3) "file the necessary quarterly report to bring its filing status with the SEC to current" until December 2, 2016; or (4) tender any additional cash or common stock.  Pl.'s 56.1 ¶¶ 32-33, 37-39, 40-42.  Adar Bays, reverting to the Note, submitted a second Notice of Conversion on December 29,[3] 2016 (the "Second Notice of Conversion"), requesting that 5Barz convert $7,000 of the Note's remaining principal and accrued interest into 257,542 shares of common stock.  Id. ¶¶ 43, 45.  In response, 5Barz's transfer agent "stated that it would need a corporate resolution" from 5Barz "in order to process" the conversion, which 5Barz has yet to issue.  Id. ¶¶ 46, 47.

---

[3] Plaintiff's 56.1 Statement states that the Second Notice of Conversion was submitted on December 25, 2016, which, in light of the material in the record to which it cites, appears to be a typographical error.

## II. DISCUSSION

Adar Bays moves for summary judgment, under Federal Rule of Civil Procedure 56, on liability, damages, and attorneys' fees for 5Barz's breach of both the Note and the Settlement Agreement. 5Barz cross moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that the Note and the Settlement Agreement are void *ab initio* as imposing usurious interest rates.[4]

We proceed by first considering 5Barz's cross-motion, which we deny *in toto*. We then grant Adar Bays' motion for summary judgment as to 5Barz's liability for breaching both the Note and the Settlement Agreement. However, we conclude that the damages Adar Bays seeks for those breaches are exorbitant and without basis in law, and thus we recalculate the damages to which it is entitled. Finally, Adar Bays may move for reimbursement of the attorneys' fees and costs for which it has proof of payment if the

---

[4] In a January 29, 2018 letter motion (Dkt. No. 66) plaintiff moved to strike defendant's surreply for the latter's failure to seek leave from this Court before moving for judgment on the pleadings. Motions to strike "are generally disfavored." Nungesser v. Columbia Univ., No. 1:15-cv-3216-GHW, 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017). Here, plaintiff's motion to strike is denied as defendant's surreply is a mere regurgitation of the moving brief; its consideration could not possibly prejudice plaintiff. See Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc., 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (To prevail on a motion to strike, "a party must demonstrate that . . . to permit the allegations to stand would result in prejudice to the movant." (quoting In re Fannie Mae 2008 Sec. Litig., 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012))); Allocco v. Dow Jones & Co., No. 02 Civ. 1029(LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002) ("Federal courts have discretion in deciding whether to grant motions to strike.").

parties are unable to resolve the issue *inter se*.

### a. Judgment on the Pleadings

#### i. Standard of Review

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir. 2006). In ruling on a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Koch v. Christie's Int'l PLC</u>, 699 F.3d 141, 145 (2d Cir. 2012). To survive a motion to dismiss, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, th[e] complaint must be dismissed." <u>Bell Atl.</u>, 550 U.S. at 570.

#### ii. Usury

Defendant seeks judgment pursuant to its fourth affirmative defense, namely, that the Note and the Settlement Agreement are void *ab initio* as imposing usurious interest rates. <u>See</u> Answer at

6, Feb. 27, 2017, Dkt. No. 35.

Under New York law,[5] a contract is criminally usurious when the parties knowingly provided for an interest rate of 25% or more.[6]  See N.Y. Penal Law § 190.40.  "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury."  <u>Hillair Capital Invs., L.P. v. Integrated Freight Corp.</u>, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (citing <u>Gandy Mach., Inc. v. Pogue</u>, 106 A.D.2d 684, 685, 483 N.Y.S.2d 744 (3d Dep't 1984)).  "When a note is not usurious on its face, a court will not presume usury; rather, the party asserting the defense must prove all the elements.  An essential element of the affirmative defense of usury is the lender's

---

[5] While defendant's affirmative defense states that "Plaintiff's claims are barred and/or violates [sic] usury laws in Florida and New York," Answer at 6, we apply New York usury law pursuant to the Note and the Settlement Agreement's choice of law provisions, the validity of which defendant does not challenge. <u>See</u> Note § 14 ("This Note shall be governed by and construed in accordance with the laws of New York applicable to contracts made and wholly to be performed within the State of New York."); Settlement Agreement § 6 ("This Agreement shall be enforced, governed and interpreted in accordance with New York law, as described in the Note."); <u>see also</u> <u>RMP Capital Corp. v. Bam Brokerage, Inc.</u>, 21 F. Supp. 3d 173, 186-87 (E.D.N.Y. 2014) (applying usury law of the state specified in the challenged agreement's choice of law provision).

[6] New York law prohibits both civil and criminal usury. <u>Sabella v. Scantek Med., Inc.</u>, No. 08 Civ. 543(CM)(HBP), 2009 WL 3233703, at *16 (S.D.N.Y. Sept. 21, 2009).  Corporations like 5Barz, however, may only assert a criminal usury defense.  N.Y. Gen. Oblig. Law § 5-521; <u>Carlone v. Lion & The Bull Films, Inc.</u>, 861 F. Supp. 2d 312, 321 (S.D.N.Y. 2012).  Indeed, statutes prohibiting usurious loans were enacted "to protect desperately poor people from the consequences of their own desperation," <u>Seidel v. 18 E. 17th Street Owners, Inc.</u>, 79 N.Y.2d 735, 740, 598 N.E.2d 7 (1992), whereas "corporations [are] generally the antithesis of 'desperately poor people' [and] are ordinarily barred from asserting a usury defense," <u>Funding Grp., Inc. v. Water Chef, Inc.</u>, 19 Misc. 3d 483, 488, 852 N.Y.S.2d 736 (Sup. Ct. Feb. 19, 2008).

usurious intent," which "is implied by a note usurious on its face" but "remains a question of fact and will not be presumed where a note states a legal rate of interest." Concord Fin. Corp. v. Wing Fook, Inc., No. 96 CIV. 5293 (DLC), 1997 WL 375679, at *5 (S.D.N.Y. July 7, 1997) (citations omitted).

It is "an open question under New York law whether a criminally usurious loan is void *ab initio* or whether a successful defense based on criminal usury results merely in the cancellation of the interest obligation or in a revised obligation to pay a non-usurious rate." Carlone, 861 F. Supp. 2d at 321 (citing Venture Mortg. Fund, L.P. v. Schmutz, 282 F.3d 185, 189 (2d Cir. 2002)). We need not weigh in on this "open question" as 5Barz has not established that the Note and the Settlement Agreement's interest rates exceed 25% in the first instance.

On its face, the Note bears an interest rate of 8%, far less than the 25% ceiling. Nevertheless, defendant argues that the effective interest rate is much higher, taking into account (1) the conversion discount, (2) the share reservation requirement, and (3) the heightened interest rate and attendant obligations incurred upon a contractual Event of Default. See Def.'s Opp'n 4-5. Similarly, defendant argues that the Settlement Agreement is void as incorporating several of these obligations. See id. We consider the merits *vel non* of these arguments *seriatim*.

## A. Conversion Discount

5Barz argues that Adar Bays has disguised 40% interest on the Note in its conversion feature, which entitles Adar Bays to a conversion price of 60% of the lowest trading price of 5Barz common stock on the fifteen days including and preceding the Conversion Date.  Note § 4(a); see Def.'s Opp'n at 12-13 ("[P]laintiff has reserved to itself a 40% discount as to the market price of defendant's public stock (40% in additional value of property) at, and, at all times from the inception of the loans until all amounts under the loans are repaid by way of a cash payment, or the conversion of debt into stock." (emphasis omitted)).  We reject the argument that the Note's conversion feature could be considered an interest obligation subject to a criminal usury defense.

First, plaintiff merely possessed an option to convert principal and interest into equity, and could instead have elected to obtain repayment in cash, which would clearly not have been usurious.  See Union Capital LLC v. Vape Holdings Inc., No. 16 Civ. 1343 (RJS), 2017 WL 1406278, at *5 (S.D.N.Y. Mar. 31, 2017).

Second, "even if [Adar Bays] chose to convert the loan principal [and interest] into shares, any potential profit [Adar Bays] might realize would still be dependent on the market price at the time of conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation" at the time the Note was executed.  Id.; see Adar Bays, LLC v. Aim Exploration,

12

Inc., 285 F. Supp. 3d 698, 702 (S.D.N.Y. 2018) ("[T]here is no guarantee that [the lender] could realize a fixed profit by reselling the stock since it is possible that the price of the stock would decrease immediately following submission of a notice of conversion."), certification denied, 310 F. Supp. 3d 454 (S.D.N.Y. 2018); KBM World Wide, Inc. v. Hangover Joe's Holding Corp., No. 15-CV-7254(SJF)(GRB), 2017 WL 685606, at *4 (E.D.N.Y. Feb. 1, 2017) ("[G]iven that the shares could fluctuate in value, and the value realized would be paid by a buyer and not the defendants, it is difficult to imagine that the share price discounts contained in the agreement could reasonably be construed as interest, and how one would calculate the rate of such interest."), report and recommendation adopted, 2017 WL 680418 (E.D.N.Y. Feb. 21, 2017).

Third, although the initial transaction, the Note, took the form of a loan, upon conversion to equity through exercise of the conversion right, "the loan[] [would] likely have the character of an equity investment," at which point it would no longer be subject to a usury defense. Beaufort Capital Partners LLC v. Oxysure Sys., Inc., No. 16-CV-5176 (JPO), 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017); accord LG Capital Funding, LLC v. 5Barz Int'l, Inc., 307 F. Supp. 3d 84, 98-99 (E.D.N.Y. 2018); see Seidel, 79 N.Y.2d at 744, 598 N.E.2d 7 ("If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'" (quoting

<u>Orvis v. Curtiss</u>, 157 N.Y. 657, 661, 52 N.E. 690 (1899))).

## B. Share Reserve

Next, defendant argues that the provision calling for 5Barz to reserve 3,684,000 shares for future conversions is usurious as its operation "effectively sequestered and reserved that stock to make it available on account for Plaintiff, to effectuate future repayment conversions of the loans using equity." Def.'s Surreply at 8.

"[T]he reservation of shares was not an independent payment to Adar Bays, but merely a mechanism by which to effectuate the share conversion as envisioned by the Note . . . . Since the share conversion feature does not render the agreement usurious, neither does the reservation of shares provision." <u>Adar Bays</u>, 285 F. Supp. 3d at 704.

## C. Default Interest Rate and Penalties

Defendant next challenges the imposition of a 24% interest rate, as well as certain added "penalties," as consequences for an Event of Default.

Like the issue of whether criminally usurious loans are void *ab initio*, it is similarly an "open question" whether New York's criminal usury law applies to default obligations whatsoever. <u>Compare</u> <u>Prowley v. Hemar Ins. Corp. of Am.</u>, No. 1:05 CV. 981(KTD), 2010 WL 1848222, at *4 (S.D.N.Y. May 7, 2010), <u>In re Vargas Realty Enters., Inc.</u>, 440 B.R. 224, 234 (S.D.N.Y. 2010), <u>and</u> <u>Bristol Inv.</u>

14

Fund. Inc. v. Carnegie Int'l Corp., 310 F. Supp. 2d 556, 562 (S.D.N.Y. 2003), with Union Capital, 2017 WL 1406278, at *8, and Madden v. Midland Funding, LLC, 237 F. Supp. 3d 130, 146 (S.D.N.Y. 2017). However, it is settled that, to the extent the criminal usury prohibition applies to default obligations, it operates only as a 25% cap on chargeable interest and does not render a Note void *ab initio*. Union Capital, 2017 WL 1406278, at *8 ("A conclusion that the default interest rate is criminally usurious would not render the Contracts void *ab initio*. . . . However, it would cap both the default interest rate the Court could impose and the resulting damages." (citing Kraus v. Mendelsohn, 97 A.D.3d 641, 641, 948 N.Y.S.2d 119 (2d Dep't 2012))).

On its face, the applicable 24% default interest rate obviously does not alone exceed the 25% statutory limit. Defendant, however, suggests that the true default interest rate is much greater, as the "Note provides for additional remedies and default calculations, depending on the particular alleged event of default." Def.'s Opp'n at 16. Defendant is referring to the Note's "penalty" provisions in the event of a failure to (1) honor the Note's conversion feature ($250 per day penalty beginning the fourth day after delivery of the Notice of Conversion, increasing to $500 per day beginning on the tenth day), and (2) pay the principal at maturity (10% increase in outstanding principal due).

We conclude *infra* that all three of these liquidated damages

provisions are unenforceable penalties. Because "[a] conclusion that the default interest rate is criminally usurious would not render the [Note] void *ab initio*," we need only be concerned with the interest awarded, and thus subject to a cap. See Union Capital, 2017 WL 1406278, at *8. As we ultimately do not award Adar Bays either the daily penalties or 10% increase in outstanding principal, the sole obligation incurred upon default, the 24% interest per annum, falls below the 25% limit, and does not warrant imposition of a usury cap.

### D. Settlement Agreement

Finally, defendant contends that the Settlement Agreement is void as derivative of the usurious Note.

"Settlement agreements are generally favored and are 'not lightly case aside.'" Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Pasternak Baum & Co., No. 17 Civ. 4571 (KPF), 2018 WL 1399207, at *6 (S.D.N.Y. Mar. 19, 2018) (quoting Hallock v. State, 64 N.Y.2d 224, 230, 474 N.E.2d 1178 (1984)). However, as defendant explains, "a settlement agreement purporting to compromise and release a borrower's usury claim is void and unenforceable if the original usurious obligation transcends into the parties' subsequent agreement." Def.'s Opp'n at 22; see also Aquila v. Rubio, No. 33561-12, 2016 WL 1761968, at *7 (N.Y. Sup. Ct. May 2, 2016) (citing 44B Am. Jur. 2D Interest & Usury § 211).

We agree that the initial obligations under the Note

"transcend[] into the parties' subsequent [settlement] agreement."
Not only does the Settlement Agreement call for 5Barz to honor
Adar Bays' First Notice of Conversion and to reserve additional
shares, but the Note is to remain in effect should 5Barz breach
the Settlement Agreement in any way.  See Settlement Agreement
§ 1(g).  However, as we conclude that the Note itself is not
usurious, the inclusion of these provisions does not taint the
Settlement Agreement.

In sum, defendant has come nowhere close to satisfying its
"heavy burden" of establishing that either the Note or the
Settlement Agreement is criminally usurious.  Accordingly, its
motion for judgment on the pleadings is denied.  We thus proceed
to plaintiff's motion for summary judgment.

### b. Summary Judgment

#### i. Standard of Review

Summary judgment is appropriate when the moving party "shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  "A fact is material when it might affect the outcome of
the suit under governing law."  McCarthy v. Dun & Bradstreet Corp.,
482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted)
(quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.
2005)).  A factual dispute is genuine if a reasonable factfinder
could decide in the nonmoving party's favor.  Id.

At summary judgment, a court must resolve all ambiguities and draw all justifiable inferences in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party must "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986). If it does so, then there is no issue for trial unless the party opposing summary judgment presents "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

### ii. Breach of Note and Settlement Agreement

Both the Note and the Settlement Agreement are enforceable under traditional principles of contract law. See In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 121 (2d Cir. 2014); LG Capital Funding, LLC v. CardioGenics Holdings, Inc., No. 16-CV-1215-AMD-SJB, 2018 WL 1521861, at *5 (E.D.N.Y. Feb. 20, 2018). To recover for breach of contract under New York law, a plaintiff must prove, by a preponderance of the evidence: "[1] the formation of a contract between the parties; [2] performance by the plaintiff; [3] failure of defendant to perform; and [4] damages." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016) (internal quotation marks omitted); accord JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 803, 893 N.Y.S.2d 237 (2d Dep't 2010). Adar Bays has established, on an unequivocal record, a *prima facie* case for breach of both the Note

and the Settlement Agreement.

It is undisputed—with the exception of defendant's usury defense rejected *supra*—that the parties formed two valid contracts, the Note and the Settlement Agreement.

Adar Bays performed under the Note by tendering $50,000—$52,500 less $2,500 for attorneys' fees and costs-to 5Barz. See Pl.'s 56.1 ¶ 6. Plaintiff was excused from performing under the Settlement Agreement, which would have entailed releasing any and all claims against defendant under the Note, because of defendant's repeated breaches thereof, *infra*. See BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 698 (2d Cir. 1993); Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc., 636 F. Supp. 2d 223, 229-30 (S.D.N.Y. 2009) ("[F]ailure to perform is not necessarily fatal where a defendant's conduct was an impediment to performance and where Plaintiff was otherwise ready, willing, and able to perform.").

5Barz repeatedly failed to perform its obligations under, and thus repeatedly breached, both the Note and the Settlement Agreement. Specifically, 5Barz failed to: (1) within three business days of Adar Bays' submission of the First Notice of Conversion on March 30, 2016 and Second Notice of Conversion on December 29, 2016, convert and deliver 184,775 and 257,542 shares of common stock, respectively, Pl.'s 56.1 ¶¶ 19, 21, 22, 45-47; (2) pay the principal and accrued interest due upon maturity, on

June 16, 2016, id. ¶ 55; (3) remain current with the SEC under the Note, on November 22, 2015, or become current with the SEC under the Settlement Agreement, on November 6, 2016, id. ¶¶ 18, 33; (4) "immediately" tender the common stock due upon signing the Settlement Agreement on November 1, 2016, id. ¶ 32; (5) tender the common stock or cash equivalent due under the Settlement Agreement on November 15, 2016, December 15, 2016, or January 15, 2017, id. ¶¶ 40-42; and (6) issue irrevocable transfer agent instructions under the Settlement Agreement, id. ¶¶ 37-39.

Finally, as discussed in more detail *infra*, Adar Bays suffered damages from 5Barz's breach of both the Note and the Settlement Agreement.

Aside from its meritless defense of usury, 5Barz's memoranda of law do not offer a single argument, legal or factual, disputing liability under the Note or the Settlement Agreement. Instead, 5Barz unpersuasively—and frequently improperly—seeks to manufacture disputes of material fact in its Local Rule 56.1 counterstatement.

*First*, Adar Bays disputes that it became delinquent in its SEC filings on November 22, 2015, because, citing to Mark Geoghegan's declaration, "the Company filed a NT-10Q on November 16, 2015 as required by the SEC." Def.'s 56.1 ¶ 18. Geoghegan's declaration, however, makes no mention of such filing. See Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001)

("[W]here . . . the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently."); <u>Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona</u>, 138 F. Supp. 3d 352, 393-94 (S.D.N.Y. 2015) (same).  Moreover, the record supports plaintiff's contention: 5Barz's own Fiscal Year 2015 10-K states, in pertinent part, "On November 22, 2015, the Company became delinquent on its filing requirements with the Securities and Exchange Commission."  Goldstein Decl. ¶ 13 (quoting Goldstein Decl. Ex. B, at 63).

*Second*, 5Barz disputes that Adar Bays submitted Notices of Conversion "to the extent that Mark Geoghegan who was the central contact for the Company with Adar Bays did not receive any such notice."  Def.'s 56.1 ¶ 19 (citing Geoghegan Decl. ¶ 28 ("I personally had not received the notices of conversion and I was the contact person with Plaintiff.")); <u>see</u> <u>id.</u> ¶¶ 20-21.  The Note, however, does not require Geoghegan to personally receive the Notices of Conversion, rather, Adar Bays was "required to give <u>the Company</u> written confirmation that th[e] Note is being converted." Note § 3 (emphasis added).  Aryeh Goldstein, Adar Bays' CEO, testified that Adar Bays submitted, and 5Barz received, Notices of Conversion on March 30, 2016 and December 29, 2016, attaching copies of each to his declaration.  <u>See</u> Goldstein Decl. ¶¶ 17, 34, 45, 47 & Exs. C & H.  5Barz has not submitted evidence to the

contrary.

*Third*, 5Barz disputes that Adar Bays tendered a default notice to 5Barz on May 10, 2016, "to the extent that as a result of data retention issues on defendant's archived data base between April 13, 2016 through September 15, 2016, defendant is unable to confirm." Def.'s 56.1 ¶ 23. However, "[a] nonmovant cannot 'raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of "knowledge and information."'" <u>AFL Fresh & Frozen Fruits & Vegetables, Inc. v. Del-Mar Food Servs. Inc.</u>, No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (quoting <u>Stepheny v. Brooklyn Hebrew Sch. for Special Children</u>, 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005)).

*Fourth*, 5Barz challenges Adar Bays' contention that 5Barz, by delivering 184,775 shares of common stock on November 9, 2016, "failed to deliver [the] shares . . . upon execution of the Settlement Agreement," on November 1, 2016, "as it was required pursuant to its terms." Pl.'s 56.1 ¶ 32. This is disputed, according to 5Barz, "to the extent that the shares in question are dated November 4, 2016." Def.'s 56.1 ¶ 32. This argument is borderline frivolous. As an initial matter, 5Barz's 56.1 counterstatement does not cite any evidence in the record for this proposition. <u>See</u> <u>Abrams v. Bloomberg, L.P.</u>, No. 09 Civ. 6537(DAB), 2012 WL 4783014, at *1 n.1 (S.D.N.Y. Mar. 27, 2012) (disregarding

plaintiff's responses to defendant's Rule 56.1 statement where plaintiff failed to refer to evidence in the record); Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (same). As 5Barz is no doubt well aware, the relevant date is not when the shares were dated but when they were delivered. See Settlement Agreement at 1 ("184,775 common shares . . . to be delivered on the following schedule . . . [i]mmediately upon signing." (emphasis added)). Regardless, the shares would still not have been delivered "immediately upon signing," on November 1, 2016, even if they had been delivered three days later on November 4, 2016.

*Fifth*, in response to Adar Bays' contention that 5Barz, contrary to its obligation under the Settlement Agreement, provided irrevocable instructions to its transfer agent pertaining to the share reserve, 5Barz explains that it "increased authorized shares to ensure that it could comply with all of its share issuance obligations and at the same time permit the Directors of the Company to protect the assets of the Company by not providing an open book to debt holders giving them access to the Company's treasury shares." Def.'s 56.1 ¶ 37; see id. ¶ 39. This is unpersuasive. Not only has defendant again failed to cite evidence in the record to support this assertion, but these "facts" do not controvert defendant's failure to issue irrevocable transfer instructions, rather, they merely provide an explanation. See AFL

Fresh, 2007 WL 4302514, at *5 ("A movant's statement of material facts will be deemed to be admitted for the purposes of the motion unless specifically controverted."). And to the extent these explanations are characterized as legal arguments, they are improperly raised in a Rule 56.1 counterstatement. See Costello, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with legal arguments).

Accordingly, Adar Bays has satisfied its *prima facie* case for breach of both the Note and the Settlement Agreement.[7] We thus proceed to consider the remedies to which Adar Bays is entitled.

### c. Remedies

Having established defendant's liability for breach of the Note and the Settlement Agreement, plaintiff seeks an astounding $342,123.69 in damages, consisting of (1) $4,000 in expectation damages, (2) $77,873.69 in unpaid principal and interest, and (3) $260,250 in liquidated damages. Pl.'s Supp. at 11. Adar Bays' professed entitlement to this award is, in large part, without basis in law. As we explain below, Adar Bays is actually entitled

---

[7] In its opening brief, plaintiff moves to strike defendant's affirmative defenses. See Pl.'s Supp. at 21-25. Yet by granting plaintiff's motion for summary judgment we have mooted this motion. See E. Savings Bank, FSB v. Ferro, No. 13-CV-5882 (SJF)(GRB), 2015 WL 778345, at *4 n.8 (E.D.N.Y. Feb. 24, 2015) (citing C.A. Venezolana de Navegacion v. Joseph Vinal Container Corp., No. 86 Civ. 8339 (RWS), 1987 WL 7377, at *1 n.1 (S.D.N.Y. Feb. 20, 1987)); Dayton Superior Corp. v. Spa Steel Prods., Inc., No. 1:08-CV-1312 (FJS/RFT), 2010 WL 3825619, at *5 (N.D.N.Y. Sept. 24, 2010).

to only $58,514.38 in expectation damages, as well as interest thereon, and $0 in liquidated damages.

### i. Expectation Damages

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 185 (2d Cir. 2007) (citing Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 384 (2d Cir. 2006)). Had 5Barz performed under the contract, it would have (1) (timely) conferred the shares requested under the First and Second Notices of Conversion, and (2) paid the outstanding principal and interest due at maturity.

### A. First Notice of Conversion

Plaintiff delivered its First Notice of Conversion to 5Barz on March 30, 2016, and was entitled under the Note to receive 184,775 shares of common stock within three business days, or by April 4, 2016.[8] Pl.'s 56.1 ¶¶ 19, 21. 5Barz, however, did not deliver the shares until November 9, 2016, after the parties had entered into the Settlement Agreement. Id. ¶ 32. In the interim, the market value of 5Barz common stock had fallen, from $0.059 at the close on April 4 to $0.054 at the close on November 9. See

---

[8] Adar Bays arrived at the 184,775 figure by dividing $5,000 by 60% of the lowest trading price of 5Barz stock on the fifteen business days preceding March 30, 2016 (60% of $0.0451). See Goldstein Decl. Exs. C, F.

Goldstein Decl. Ex. F. Adar Bays is entitled to the loss of market value in the shares during that period, calculated by multiplying the number of shares by the change in value, 184,775 shares x ($0.059 - $0.054), or $923.88.

## B. Second Notice of Conversion

Unlike the First Notice of Conversion, in response to which shares were belatedly delivered, the converted shares were never delivered as requested in the Second Notice of Conversion.

The Second Circuit has explained that "the damage award resulting from the breach of an agreement to purchase securities is the difference between the contract price and the fair market value of the asset at the time of the breach." Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 825 (2d Cir. 1990) (citing Aroneck v. Atkin, 90 A.D.2d 966, 967, 456 N.Y.S.2d 558 (4th Dep't 1982)). This formula ensures that the non-breaching purchaser receives the benefit of his bargain, i.e., the difference between the price at which he contracted to purchase the security and the price at which the security was trading at the time the seller breached by failing to deliver the shares. In the context of a convertible note, the non-breaching plaintiff to whom the shares were not delivered is entitled to damages calculated by "subtracting the contract price—the price at which [the plaintiff] is entitled to convert shares under the Note—from the market price of the shares on the date of the breach." LG Capital Funding, LLC v. Coroware, Inc., No. 16

Civ. 2266 (AMD)(PK), 2017 WL 3973921, at *4 (E.D.N.Y. Sept. 8, 2017) (alterations incorporated) (quoting Union Capital, 2017 WL 1406278, at *7). Put somewhat differently, Adar Bays is afforded the benefit of its bargain through the difference between the price at which it agreed to purchase, i.e., convert principal into, shares of 5Barz common stock, 60% of the lowest trading price of the shares in the fifteen business days preceding and including the Conversion Date, see Pl.'s 56.1 ¶ 10, Note § 4(a), and the price at which the shares were trading at the time 5Barz was obligated yet failed to deliver the shares, three business days after the Conversion Date.

Adar Bays submitted its Second Notice of Conversion on December 29, 2016, seeking to convert $7,000 of the remaining principal amount and interest into 257,542 shares of common stock. Pl.'s 56.1 ¶¶ 43, 45. Plaintiff is entitled to the difference between 60% of the lowest trading price in the fifteen business days prior to and including December 29, 2016 (60% of $0.0453, or $0.02782, see Goldstein Decl. Ex. H), and the trading price at the close of January 4, 2017 ($0.067), three business days after December 29, 2016. See id. Ex. F. In other words, plaintiff is due 257,542 shares x ($0.067-$0.02782), or $10,090.50.

### C. Failure to Remain Current with the SEC

Plaintiff argues that it is separately entitled to damages for defendant's failure to become current with the SEC by November

6, 2016, as the Settlement Agreement requires. According to plaintiff, the 184,775 shares of common stock from the First Notice of Conversion were delivered pursuant to the Settlement Agreement on November 9, 2016, but 5Barz did not become current until December 2, 2016. "The value of the 184,775 shares of Common Stock decreased by over $4,000 during the period of November 1, 2016 to December [2], 2016." Pl.'s Supp. at 18. Plaintiff should be awarded damages for this devaluation, it argues, because "[d]efendant's failure to bring its filing status with the SEC current resulted in [plaintiff's] inability to sell the shares it received" during that period. Pl.'s 56.1 ¶ 35.

It has "long been established in New York that a breaching party is liable for all direct and proximate damages from the breach." Tractebel Energy Mktg., Inc. v. AEP Power Mtkg., Inc., 487 F.3d 89, 110 (2d Cir. 2007) (citing Wakeman v. Wheeler & Wilson Mfg. Co., 101 N.Y. 205, 4 N.E. 264, 266 (1886)). The damages, however, must be "reasonably certain and such only as actually follow . . . from the breach of the contract." Id. Here, plaintiff has made no showing that its inability to sell shares followed from defendant's failure to remain current with the SEC.

It is true that the SEC is permitted, pursuant to Section 12(k) of the Securities Act of 1934, to suspend trading in securities of delinquent filers. 15 U.S.C. § 78$l$(k); Bravo Enters. Ltd., Exchange Act Release No. 75775, 2015 WL 5047983, at *5 (Aug.

27, 2015) ("[W]e have suspended trading in securities of delinquent issuers who have failed to comply with the periodic reporting requirements of the federal securities laws because we were of the opinion that there was a lack of current, adequate, and accurate information about the company." (internal quotation marks omitted)); see, e.g., Vantone Int'l Grp., Inc., Exchange Act Release No. 75304, 2015 WL 3929978, at *1 (June 26, 2015); First Am. Sci. Corp., Exchange Act Release No. 74778, 2015 WL 1814345, at *1 (Apr. 22, 2015). Yet there is no evidence in the record, aside from conclusory assertions, that such a suspension was imposed, or, even had it been, that the suspension was the result of 5Barz's failure to remain current with the SEC.[9] See Goldstein Decl. ¶ 29 ("Because Defendant was not current . . . [Adar Bays] was unable to sell the shares."); Geoghegan Decl. ¶ 23 ("During the period between the date when Defendant agreed to become current in its filing status with the SEC, November 6, 2016, and the date in which it did become current, December [2], 2016, the shares could not be sold pursuant to SEC law during that time period.").

Accordingly, plaintiff is not entitled to damages for 5Barz's

---

[9] We do not mean to suggest that an issuer's failure to remain current with the SEC could only impact share prices in the event of a trading suspension. We could, for instance, envision a scenario in which an expert testifies that the prospect of a trading suspension, brought about by the issuer's failure to remain current with the SEC, depresses share prices by a certain percentage on average. Plaintiff has simply not made such a showing here.

failure to become current with the SEC as provided in the Settlement Agreement.

### D. Principal

Adar Bays is also entitled to the outstanding principal balance on the Note, $52,500 less $5,000, the value of principal converted, albeit belatedly, through the First Notice of Conversion, or $47,500. See LG Capital Funding, LLC v. Worthington Energy, Inc., No. 16-CV-6288 (NGG)(ST), 2018 WL 1370266, at *5 (E.D.N.Y. Feb. 20, 2018), report and recommendation adopted, 2018 WL 1368025 (E.D.N.Y. Mar. 16, 2018).

### E. Interest

Plaintiff is also contractually entitled to interest due on the Note. Specifically, plaintiff is entitled to the 8% interest per annum beginning on the Note's execution, on June 16, 2015, until the first Event of Default was triggered, at which point the default interest rate of 24% per annum began to apply.

Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and shall begin to run "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(a)-(b); see id. § 5002; see also U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991) ("[A] plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."). In practical terms, "[a]n award of interest is 'often

appropriate from the time at which a party was deprived of the use of money.'" Calgon Carbon Corp. v. WDF, Inc., 700 F. Supp. 2d 408, 416 (S.D.N.Y. 2010) (quoting Lawyers' Fund for Client Protection v. Bank Leumi Tr. Co., 94 N.Y.2d 398, 407, 727 N.E.2d 563 (2000)).

New York's statutory prejudgment interest rate is 9% per annum. See N.Y. C.P.L.R. § 5004. But if the applicable contract "provides a rate at which interest is to be calculated, then the contractual rate, rather than the statutory rate . . . governs." Bank of Am., N.A. v. Brooklyn Carpet Exchange, Inc., No. 15cv5981 (LGS)(DF), 2016 WL 8674686, at *5 (S.D.N.Y. May 13, 2016) (quoting Nuera Commc'ns, Inc. v. Telron Commc'ns USA, Inc., No. 00 Civ.9167(RMB)(FM), 2002 WL 31778796, at *3 (S.D.N.Y. Nov. 15, 2002)), report and recommendation adopted, 2016 WL 3566237 (S.D.N.Y. June 27, 2016). In such cases, "prejudgment interest is calculated at the contract rate, until the amount owed under the contract merges into a judgment." Id. (citing NML Capital v. Republic of Argentina, 621 F.3d 230, 240 (2d Cir. 2010)). However, "[i]n order to prevail at a rate higher than the statutory 9% per annum, the contract itself must clearly specify the rate charged." Microban Prods. Co. v. API Indus., Inc., No. 14 Civ. 41(KPF), 2014 WL 1856471, at *19 (S.D.N.Y. May 8, 2014) (quoting Gates Rubber Co. v. Vehicle Parts Warehouse Corp., 952 F. Supp. 132, 133 (E.D.N.Y. 1996)).

Adar Bays argues that it is entitled to 24% default interest commencing November 22, 2015, when 5Barz was no longer current with its SEC filings. See Pl.'s 56.1 ¶ 59. We disagree. Plaintiff has not demonstrated that it suffered any damages from 5Barz's failure to remain current with the SEC as of November 2015. Indeed, the purpose of the provision requiring 5Barz to remain current with the SEC was to ensure a market for 5Barz common stock. Yet in the absence of any record evidence that Adar Bays even held any common stock at that time (it first sought to convert the Note into common stock four months later, in late March 2016), or that trading was ever halted, *supra*, there is no predicate for a cause of action against 5Barz based on its failure to remain current in SEC filings. Put somewhat differently, Adar Bays had yet to be "deprived of the use of money" by November 2015.

However, Adar Bays is entitled to the "clearly specified" 24% interest per annum rate accruing after April 4, 2016, when 5Barz failed to honor the First Notice of Conversion. See Note § 8(k). Thus, plaintiff is entitled to the following interest award: 8% interest per annum on $52,500 accruing after June 16, 2015, the date the Note was executed, to April 4, 2016; 24% interest per annum on $52,500 accruing after April 4, 2016, the deadline for 5Barz to convert $5,000 in outstanding principal and interest into 184,775 shares of common stock, until November 9, 2016; 24% interest per annum on $47,500, accruing after November 9, 2016,

when 5Barz satisfied the First Notice of Conversion, until the date on which judgment is entered.

### ii. Liquidated Damages

In addition to its expectation damages, plaintiff also seeks liquidated damages, to wit, (1) the daily "penalties" due for defendant's failure to timely honor the Notices of Conversion, or in the alternative, the amount calculated pursuant to the Note's "Make Whole" provision, and (2) a 10% increase in principal outstanding as unpaid upon the Note's maturity.

Under New York law, courts will uphold and enforce liquidated damages provisions where "(1) actual damages may be difficult to determine <u>and</u> (2) the sum stipulated is not plainly disproportionate to the possible loss." <u>U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.</u>, 369 F.3d 34, 70 (2d Cir. 2004) (emphasis added) (quoting <u>In re United Merchants & Mfrs., Inc.</u>, 674 F.2d 134, 142 (2d Cir. 1982). While "[t]he New York Court of Appeals has cautioned that courts should be reluctant to interfere with liquidated damages provisions," <u>N. Shipping Funds I, L.L.C. v. Icon Capital Corp.</u>, 998 F. Supp. 2d 301, 334 (S.D.N.Y. 2014), if the clause in question does not satisfy one or both of these factors then it is considered an impermissible penalty and will not be enforced by courts, <u>see</u> <u>U.S. Fidelity Guar.</u>, 369 F.3d at 70-71. "In other words, 'if such a clause is intended to operate as a means to compel performance, it will be deemed to be a penalty

and will not be enforced.'" Union Capital, 2017 WL 1406278, at *7
(quoting Rattigan v. Commodore Int'l Ltd., 739 F. Supp. 167, 169
(S.D.N.Y. 1990)).

All of the liquidated damages plaintiff seeks are penalties
and thus will not be awarded.

### A. Daily Fine for Failure to Honor Notices of Conversion

Plaintiff first seeks liquidated damages under Section 8 of
the Note, which provides for the daily fee of $250 for each day
after the third day that shares are not issued following a Notice
of Conversion, escalating to $500 per day beginning on the tenth
day. See Note § 8. This provision is clearly an impermissible
penalty.

First, actual damages for the failure to honor a notice of
conversion are not difficult to calculate. As we demonstrated
supra, expectation damages can be calculated "by subtracting the
contract price—the price at which [the plaintiff] is entitled to
convert shares under the Note—from the market price of the shares
on the date of the breach." LG Capital Funding, 2017 WL 3973921,
at *4 (alterations omitted); see LG Capital Funding, 2018 WL
1521861, at *8 ("It is plain that in the Note there is no
uncertainly about the method of calculating actual damages from a
failure to provide converted shares, regardless of when the failure
occurs. [Plaintiff] is entitled to, within 3 days of the

Conversion Date, shares at 58% of the lowest closing bid price of [defendant's] common stock in the 12 trading days prior to the Conversion Date . . . . And damages would be equal to the difference between that price and [defendant's] stock price on the date of the breach.").

Second, plaintiff has offered no explanation for how the daily fees of $250 and $500 are proportionate to possible damages incurred from 5Barz's failure to confer shares of common stock, trading at less than ten cents per share, to Adar Bays. To the contrary, "[i]n this case, the liquidated damages provision is *per se* disproportionate because it bears no relationship to actual losses." LG Capital Funding, 2018 WL 1521861, at *10; see LG Capital Funding, 307 F. Supp. 3d at 102 ("Plaintiff offers no explanation as to how a daily fee of $250, escalating to $500 after the tenth day on which defendant has failed to convert shares could bear a proportional relation to plaintiff's probable loss arising from defendant's failure to deliver conversion shares. These daily fees have resulted in 'liquidated damages,' or, as characterized in the Note, penalties that are widely disproportionate to the actual losses.").

Indeed, Adar Bays' May 2016 default notice strongly implies that the purpose of the daily fee obligation was not to estimate possible damages, but instead to compel performance: "[A]s a result of the Company's failure to deliver our Client shares of its common

stock pursuant to Adar Bays' March 30, 2016 notice of conversion, default payments of $250 per day, escalating to $500 per day, are now accruing <u>until the shares are delivered</u>."  Goldstein Decl. Ex. D, at 2 (emphasis added); <u>see</u> <u>LG Capital Funding, LLC v. Coroware, Inc.</u>, No. 16-CV-2266 (AMD)(PK), 2017 WL 9250379, at *6 (E.D.N.Y. July 12, 2017), <u>report and recommendation adopted</u>, 2017 WL 3973921 (E.D.N.Y. Sept. 8, 2017).

Finally, even the Note <u>itself</u> refers to the daily fees as penalties.  <u>See</u> Note § 8 ("In the event of a breach of Section 8(k) the <u>penalty</u> shall be $250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the Company.  This <u>penalty</u> shall increase to $500 per day beginning on the 10th day." (emphasis added)); <u>LG Capital Funding, LLC v. FLSAR, Inc.</u>, No. 16-CV-3565 (LDH)(JO), 2017 WL 5068116, at *5 (E.D.N.Y. July 27, 2017) ("Though courts should construe any ambiguity in favor of a penalty, the express language of the Note itself refers to a 'penalty.'" (alteration omitted)).

## B. "Make Whole" Provision

In the alternative, plaintiff seeks to invoke the Note's "Make Whole" provision, which operates at Adar Bays' election, as a means for calculating damages in the event 5Barz fails to honor a Notice of Conversion.  Specifically, Adar Bays is entitled to an amount calculated by multiplying the high trade price at any time on or after the day of Adar Bays' exercise of its option by the number

of conversion shares requested.  See Note § 8.  Adar Bay may not avail itself thereof.

As an initial matter, and as Adar Bays concedes, it "elected not to enforce the Make-Whole Provision in this instance."  Pl.'s Supp. at 16.

Regardless, the provision is an impermissible and unenforceable penalty.  As discussed *supra*, the damages for 5Barz's failure to honor a Notice of Conversion are not difficult to determine.  Moreover, the damages awarded pursuant to the Make Whole provision are totally disproportionate to plaintiff's actual damages.  While the latter rectifies plaintiff's loss of its contractual 40% discount rate, the former "is tallied by multiplying the number of shares by 100% of the <u>highest</u> market price on <u>any</u> date subsequent to the failure to convert.  The liquidated damages formula of the Note is thus designed to provide [Adar Bays] with a guaranteed higher cash payout than a true make-whole measure, which would focus only on [Adar Bays'] loss as a result of [5Barz's] failure to abide by the terms of the bargain."  <u>Union Capital</u>, 2017 WL 1406278, at *7.  It is clear that "the so-called 'Make Whole' provision of the Note is nothing of the sort and is instead an unenforceable penalty," which will not be awarded.  <u>Id.</u>

### C. Fine for Untimely Principal Repayment

Plaintiff separately invokes the Note's provision pursuant to

which "[i]f this Note is not paid at maturity, the outstanding principal due under this Note shall increase by 10%." Note § 8.

The proper damages award for non-payment of principal is (1) the amount of outstanding principal, plus (2) interest for the period during which the outstanding principal remained unpaid. Not only are these damages readily calculable, but the liquidated damages amount—$4,750 or 10% of $47,500 ($52,000 less $5,000 in converted principal)—bears no reasonable relationship to these actual damages, especially given the 24% default interest rate which we have sustained. Accordingly, the 10% of outstanding principal award, clearly a penalty to ensure performance, will not be imposed.

### d. Attorneys Fees' and Costs

Finally, Adar Bays seeks reasonable attorneys' fees and costs incurred as the prevailing party in this action, as provided for in Sections 7 and 8 of the Note, and Section 10 of the Settlement Agreement. See, e.g., Note § 8 ("If [Adar Bays] shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging an attorney, then if [Adar Bays] prevails in such action, [it] shall be reimbursed by [5Barz] for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding."). Courts in this Circuit have enforced nearly identical fee-shifting provisions, as do we. See, e.g., LG Capital

_Funding_, 307 F. Supp. 3d at 99; _LG Capital Funding_, 2017 WL 9250379, at *6; _see also_ _NetJets Aviation, Inc. v. LHC Commc'ns, LLC_, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce a contract is enforceable if the contractual language is sufficiently clear."). However, because Adar Bays has not attached proof that it has paid its attorneys the sum for which reimbursement is sought, _see_ _F.H. Krear & Co. v. Nineteen Named Trs._, 810 F.2d 1250, 1269 (2d Cir. 1987), and because 5Barz has not otherwise addressed this issue, _see_ _Salus Capital Partners, LLC v. Moser_, 289 F. Supp. 3d 468, 483 (S.D.N.Y. 2018), we will proceed as follows.

If the parties are unable to resolve the issue of attorneys' fees _inter se_ within ten days of this Memorandum and Order, Adar Bays may move for fees ten days thereafter. 5Barz's opposition shall be served within ten days after service of the motion, and any reply shall be served within five days after service of the opposition. Adar Bays' submission of the attorneys' fees must be supported by contemporaneous records, and be organized in a manner that facilitates evaluation (e.g., all hours spent on a specific task shall be aggregated). Any challenge advanced by 5Barz shall be focused on a particular task and shall include a position on the extent to which the amount of fees sought for the task is excessive. _See_ _Diamond D. Enters. USA, Inc. v. Steinsvaag_, 979

F.2d 14, 19 (2d Cir. 1992) ("Because a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys), . . . courts must scrutinize fee requests to ascertain whether they are reasonable." (citing Peter Fabrics, Inc. v. S.S. "Hermes", 765 F.2d 306, 317 (2d Cir. 1985))).

## III. CONCLUSION

Adar Bays' motion for summary judgment, Dkt. No. 50, is granted, and 5Barz's cross-motion for judgment on the pleadings, Dkt. No. 60, is denied. Adar Bays' letter motion for leave to move to strike, Dkt. No. 66, is denied. Adar Bays is entitled to $58,514.38 plus interest as described *supra* § II(c)(i)(E). The Clerk of the Court is respectfully directed to terminate docket numbers 50, 60, and 66.

Dated:    New York, New York
          August 16 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Counsel for plaintiff:    Michael M. Steinmetz
                          Kevin Kehrli
                          Michael Smalia
                          Garson, Segal, Steinmentz, Fladgate LLP


Counsel for defendant:    Mark R. Basile
                          Catherine P. McGovern
                          The Basile Law Firm P.C.